UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JATAVA L.[1],

                        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

1:20-CV-00772-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 20)

Plaintiff Jatava L. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 15) is granted, the Commissioner's motion (Dkt. No. 17) is denied, and the case is remanded to the Commissioner for further proceedings.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

## BACKGROUND[2]

On March 15, 2017, plaintiff filed for DIB and SSI, alleging disability beginning January 21, 2017 because of bulging disc, arthritis in back, learning disability, and right rotator cuff sprain. (See Tr. 95, 182-88, 189-94)[3] Plaintiff's disability benefits application was initially denied on June 28, 2017. (Tr. 93-94) Plaintiff timely filed a written request for a hearing on August 25, 2017. (Tr. 129-30) A hearing was held before Administrative Law Judge Stephen Cordovani ("the ALJ") on March 25, 2019. (Tr. 37-91) Plaintiff, who was represented by counsel, testified at the hearing. (Id.) The ALJ also received testimony from Vocational Expert Christina Boardman ("the VE"). (Id.) On May 23, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 15-30) The Appeals Council denied plaintiff's request for review of the ALJ's determination on April 22, 2020, and this action followed. (Tr. 1-6)

Born on June 30, 1985, plaintiff was 31 years old on the alleged onset date. (Tr. 95) Plaintiff attended one year of college and has EKG and CPR certifications. (Tr. 43) Plaintiff has past relevant work experience as a nurse's assistant, collector, and cashier. (Tr. 28-29)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[3] References to "Tr." are to the administrative record in this case.

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the Act through December 31, 2023. (Tr. 18) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 21, 2017. (Tr. 18) At step two, the ALJ found that plaintiff has the severe impairments of cervical, thoracic, and lumbar strain; right rotator cuff strain; lumbar degenerative disc disease; obesity; and right wrist pain. (*Id.* at 18-21) Also at step two, the ALJ found that plaintiff's "medically determinable impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities and therefore are non-severe." (*Id.* at 18) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 21-22) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs and occasionally balance. She can occasionally kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, and scaffolds. She cannot do full squatting and cannot bend at the waist all the way to the floor. The claimant cannot perform overhead work with the right non-dominant arm. She can frequently reach, push and pull with her right arm. She can frequently handle and finger with her right non-dominant hand.

(Tr. 22-28) Proceeding to step four, the ALJ found that plaintiff was capable of performing her past relevant work as a collector. (Tr. 28-30) At step five, the ALJ considered plaintiff's age, education and RFC and made the alternative finding that additional jobs exist in significant numbers in the national economy that plaintiff can also perform, such as marker, routing clerk, or office helper. (*Id.*) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from January 21, 2017 through the date of the decision. (Tr. 30)

## IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by improperly concluding, at step two, that her mental impairments were non-severe, and by failing to account for her mental impairments in the RFC. (*See* Dkt. No. 15 (Plaintiff's Memo. of Law)) The Court agrees with plaintiff that the ALJ erred by failing to account for plaintiff's mental limitations in his RFC analysis.

At the second step of the sequential analysis, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits the plaintiff's physical or mental ability to do certain work activities. *Trombley v. Berryhill*, 1:17-CV-00131, 2019 WL 1198354, at *5 (WDNY Mar. 14, 2019); 20 C.F.R. §404.1520(c), 416.920(c). The step-two severity standard "is *de minimis* and intended only to screen out the very weakest

cases." *Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (WDNY 2015); *citing McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). An impairment is "not severe" if the medical evidence establishes only a slight abnormality or combination of abnormalities which do not significantly limit the claimant's ability to perform work-related activities. *See* SSR 85-28, 1985 WL 56856, *3-4 (S.S.A. Jan. 1, 1985) (clarifying policy on findings of "non-severe" impairments). An error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process, and specifically considers the "non-severe impairment" during the subsequent steps of the process. *Trombley*, 2019 WL 1198354, *6; *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, at *20 (WDNY Mar. 6, 2015); *citing Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). However, "[r]emand is required when the ALJ fails to account for the [plaintiff's] non-severe impairments when determining the RFC." *Fiutko v. Berryhill*, 17-CV-686, 2019 WL 2635738, at *3 (WDNY June 27, 2019); *Graham v. Berryhill*, 16-CV-6787, 2017 WL 5019274 at *3 (WDNY Aug. 2, 2017); *citing Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (summary order); *Lawrence v. Comm'r of Soc. Sec.*, 17-CV-6722, 2019 WL 2491920 at *3 (WDNY June 14, 2019) (collecting cases).

On June 8, 2017, plaintiff underwent a psychiatric consultative examination with Dr. Ashley Dolan, Psy.D. (Tr. 535-40) Plaintiff reported crying spells, weight loss, loss of appetite, dysmorphic moods, fatigue, pain, anxious and restless thoughts and a recent panic attack. (*Id.*) Dr. Dolan diagnosed plaintiff was unspecified depressive disorder and unspecified anxiety disorder. (Tr. 540) Dr. Dolan indicated that plaintiff appeared fatigued and lethargic with a restricted affect and that her attention and concentration were mildly

impaired due to her psychiatric symptoms. (Tr. 538-39) Dr. Dolan opined that plaintiff was able to understand, remember and apply simple and complex directions; use reason and judgment to make work-related decisions; interact adequately with co-workers, supervisors and the public; perform tasks at a specific pace; and sustain an ordinary routine and regular attendance. (Tr. 539) Dr. Dolan found that plaintiff had mild limitations regulating emotions, controlling behavior and maintaining well-being. (*Id.*) The ALJ assigned great weight to Dr. Dolan's opinion and found it to be consistent with plaintiff's treatment records and activities of daily living. (Tr. 20) Based on Dr. Dolan's opinion, the ALJ concluded that plaintiff had mild limitations in her ability to understand, remember or apply information, and mild limitations in her ability to concentrate, persist, or maintain pace. (Tr. 20-21) Other evidence in the record also suggested that plaintiff suffered from some mental health impairments. Treatment notes reflect that plaintiff regularly reported symptoms of anxiety and depression to her primary care provider and that she was treated with medication for these conditions during the relevant period. (Tr. 533-40, 555-57, 561-76, 658-60) In the Social Security application function report, plaintiff indicated that she has anxiety attacks two to three times per week that last five to ten minutes. (Tr. 18) Additionally, plaintiff testified that she continues to experience symptoms of anxiety and depression which impact her daily activities and ability to a function. (Tr. 68-72). Thus, there does not appear to be substantial evidence in the record to support the ALJ's finding, at step two of the analysis, that plaintiff's mental health impairments were *de minimis* or constituted only a "slight abnormality."

Moreover, even if the record did support a step-two finding that plaintiff's mental impairments were non-severe, the ALJ was still obligated to consider those impairments

in formulating the RFC. Regulations and case law are clear that an RFC determination must account for limitations imposed by both and non-severe impairments. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012). Such an accounting did not occur here. Indeed, despite giving significant weight to Dr. Dolan's finding that plaintiff had mild mental health limitations in two areas of functioning, the ALJ did not include any mental limitations in the RFC nor did he explain the absence of such limitations. At a minimum, the ALJ's reasoning as to why he did not include any mental limitations in the RFC should have been stated in his decision. Accordingly, remand is required. In *Peters v. Comm'r of Soc. Sec.*, 18-CV-00144, 2020 U.S. Dist. LEXIS 27257 (WDNY Feb. 13, 2020), it was determined that even when mental health limitations are "vaguely defined as mild" and classified as non-severe, an ALJ is still required to explain why he or she rejected those limitations. The *Peters* Court further noted that "defendant's argument that a finding of a non-severe impairment at step two automatically supports a finding that there are no mental work-related limitations is [] unsuccessful". *See also Legette v. Colvin*, 12-CV-04831, 2014 U.S. Dist. LEXIS 115404 (EDNY Aug. 19, 2014) (remanding where the ALJ failed to consider plaintiff's mild problems dealing with stress); *Parker-Grose*, 462 F. App'x at 18 (If the ALJ fails to address nonsevere mental impairments in formulating the RFC, it is "necessary to remand [the] case for further consideration.").[4]

Plaintiff also argues that certain portions of the RFC are not supported by substantial evidence because the ALJ relied on stale opinion evidence. (*See* Dkt. No. 15

---

[4] The Court also rejects defendant's argument that the ALJ properly evaluated plaintiff's anxiety and depression by following the special technique for evaluating mental impairments at step two of the regulations. To the contrary, the Social Security Regulations stress that the "special technique" described in 20 C.F.R. 404.1520(a) is not an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detained assessment." *See* SSR 96-8p, 1996 SSR LEXIS 5, at *13, 1996 WL 374184, at *4.

(Plaintiff's Memo. of Law)) The Court agrees, and finds that remand is required on this basis as well.

Medical source opinions that are conclusory, stale or based on an incomplete medical record cannot constitute substantial evidence in support of an ALJ's determination of a plaintiff's RFC. *Thompson v. Berryhill*, 17-CV-786, 2019 WL 217999, at *4 (WDNY June 28, 2019). While the mere passage of time does not render an opinion stale, a medical opinion may be stale where, as here, subsequent treatment notes indicate a claimant's condition has deteriorated. *Whitehurst v. Berryhill*, 16-CV-1005, 2018 WL 3868721, at *4 (WDNY Aug. 14, 2018). *See also Jones v. Comm'r of Soc. Sec.*, 10-CV-5831, 2012 WL 3637450, at *2 (EDNY Aug. 22, 2012) (the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not count for her deteriorating condition.").

Here, the ALJ determined that plaintiff suffered from a severe impairment related to wrist pain. (Tr. 18, 26) Despite this finding, the ALJ concluded that plaintiff retained the ability to perform light work that included frequent reaching, pushing, pulling, handling, and fingering with the right upper extremity. (Tr. 26) All three of the medical opinions in the record were rendered in 2017, and none of the opining doctors assessed plaintiff with any wrist impairment. (Tr. 102-04, 328-436, 541-47) Approximately two years later, in March of 2019, plaintiff was treated for right wrist and hand pain, numbness and tingling. (Tr. 655-60) It was suspected that plaintiff had carpal tunnel syndrome, a wrist splint was prescribed, and an EMG was ordered. (*Id.*) Thus, there is no medical opinion evidence in the record which addresses plaintiff's limitations in pushing, pulling, handling, and fingering with her right wrist and arm, in light of the more recent medical evidence

regarding plaintiff's right wrist impairment. On remand, the ALJ should further develop the record as to plaintiff's wrist impairment and whether, after considering any new diagnosis or findings, plaintiff retains the ability to frequently push, pull, handle, and finger with her right upper extremity. *See Arnold v. Comm'r of Soc. Sec.*, 17-CV-987, 2019 WL 2521179, at *8 (WDNY June 19, 2019) ("Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."); *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (WDNY 2016) (To fill a gap in the record, an ALJ "could have requested additional information from the treating physician […]; he could have obtained an SSA consultative examination; and/or he could have requested an opinion from a medical expert.").[5]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is denied, and the case is remanded to the Commissioner for further proceedings.

**SO ORDERED.**

Dated: September 28, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[5] Because remand is appropriate for the reasons stated herein, the Court does not address plaintiff's remaining assertions in favor of remand, including that the ALJ failed to properly weigh the medical opinions in the record. On remand, the ALJ should reevaluate the opinion evidence in light of the record as a whole, in a manner consistent with this Decision and Order and including any additional evidence requested to supplement the record.